## No. 23017.

WILLIAM JAMES BREWER *v*. THE PEOPLE OF THE STATE
OF COLORADO.
(452 P.2d 370)

Decided April 1, 1969.

506

Donald P. MacDonald, L. Thomas Woodford, John A. Purvis, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Paul D. Rubner, Assistant, George E. DeRoos, Assistant, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE LEE.

PLAINTIFF in error, William James Brewer, was convicted of the crime of indecent liberties, upon a plea of guilty. He was sentenced to a term of three years and three months to six years in the Colorado State Penitentiary. He will hereinafter be referred to as "defendant" or as "Brewer."

Approximately three months after sentencing, defendant, pro se, filed his motion under Colo. R. Crim. P. 35(b), which set forth three basic claims for relief as follows:

"1. This court was without jurisdiction to receive the plea of guilty entered by the defendant herein, due to the fact that said plea of guilty was the result of police coercion, threats, intimidations, promises and a denial of defendant's constitutional guarantees as set forth in the Fifth and Sixth Amendments to the United States Constitution and also under the Fourteenth Amendment to the United States Constitution as well as the Equal Protection Clause of the Colorado State Constitution.

"2. That the coerced plea of guilty was obtained in violation of defendant's constitutional guarantees would have been proved had the court heard in Aggravation and Mitigation as is required by the statutes of our State, and said denial of a hearing in Aggravation and Mitigation ousted the Court of jurisdiction to impose sentence in the instant matter.

"3. That the statement used by the District Attorney's Office in the presentation of his case after the plea of guilty was obtained from the defendant after threats, and police brutality in the physical sense, and this, too, upon a hearing in Aggravation and Mitigation would have been brought forth."

Pursuant to the filing of this motion, the trial court set the matter for hearing. After an evidentiary hearing was

held, the court ordered that defendant's motion be denied.

Defendant brings this writ of error to reverse the trial court, praying that he be discharged in view of the long sentence already served by him or, in the alternative, that he be permitted to withdraw his guilty plea, enter a plea of not guilty, and be granted a trial on the merits.

The record reveals that upon being notified he was wanted by the sheriff's office defendant voluntarily appeared there in the early afternoon of February 8, 1966. He was then advised by the sheriff's investigator that he was being detained in connection with a charge of rape and child molestation involving a 9-year old girl. Defendant was permitted to telephone his wife who came to the sheriff's office and conferred with defendant. He claims he was denied permission to call an attorney although he and his wife had discussed this matter at the sheriff's office. This was disputed by the sheriff.

When Mrs. Brewer left, defendant was taken into an interrogation room. After some preliminary discussion a tape recorder was put in operation and recorded the interrogation for approximately thirty minutes. Preliminarily the sheriff's investigator explained defendant's rights to him as follows:

"Bill, I am Bud Reese and this is Gene Cook. Before we get into this, Bill, we would like to advise you concerning your rights. Your [sic] not required to tell us anything that might involve you in a crime. Anything you do tell us can be used against you. You are entitled to legal counsel before making any statement. We are not empowered to threaten you, nor can we promise you anything."

The defendant then confessed to certain indecent acts committed upon the child involved. A stenographer was called into the office and a statement was taken stenographically, transcribed, and then signed by defendant in the presence of the officers and the stenographer. The written statement, dated February 8, 1966, contained the

following in the opening and closing paragraphs respectively:

"My name is William Brewer. I am 42 years old and my birthdate is January 22, 1924. I live at Box 441, Laporte, Colorado. Being first informed of my right that I am not required to make any statement which might involve me in some crime, do now make this voluntary statement knowing that it can hereafter be used against me in a court of law.

\* \* \*

"I have read this statement and fully understand its meaning. I have initialed all corrections and signed it voluntarily. I have not been promised any favors nor threatened in any way and I have been treated fairly by all investigating officers. I have been given the opportunity to contact an attorney prior to giving this statement."

The transaction out of which the charges arose took place in defendant's home. Defendant contended, contrary to his written statement, that he was threatened and coerced into giving the confession. He accused the sheriff's officers of threatening that if he did not confess his wife would be arrested and charged as an accomplice. Furthermore, defendant accused the sheriff's officers of literally beating the confession out of him while he was seated in a chair with his arms handcuffed behind him. The officers admitted stating that they might have to bring defendant's wife in for questioning inasmuch as she was in the home at the time of the alleged offense. However, they denied threatening to file charges against her. Likewise, the officers vehemently denied that use of any physical violence on defendant, as did other witnesses who were in close proximity to the interrogation room.

The next day an information was filed against defendant charging him with indecent liberties and unnatural carnal copulation.

Defendant was taken to court on February 21, 1966

and, being without counsel, the court appointed trial counsel for him. On defendant's motion the arraignment was twice continued until March 7, 1966, at which time defendant pled guilty to the count of indecent liberties. The court extensively and comprehensively explained to and advised defendant of the nature of the proceedings, of his rights, and of the consequences of a conviction, before accepting defendant's plea. We set forth these proceedings verbatim, as they form the basis of the court's denial of defendant's Rule 35(b) motion.
"* * *

"How do you plead to the information charging you with the crime of indecent liberties, whether guilty or not guilty?

"MR. BREWER: Guilty, Your Honor.

"THE COURT: All right, Mr. Brewer, First of all, I want to call your attention to the fact that the District Attorney has apparently arraigned you on only what would appear to be the first count of the information; namely, indecent liberties, where also in fact there is another count he has not arraigned you on, a second count of unnatural carnal copulation. I may ask you a question or two about that in view of your plea.

"First of all, there is a duty imposed upon the Court to determine that your tendered plea of guilty as to Count One, charging indecent liberties, is made voluntarily and with an understanding of the nature of the charge and explain to you your rights to trial by jury, your rights to legal counsel, and the possible penalty provided by statute for the offense charged.

"First of all, you have a right to legal counsel to represent you at every stage of the trial court proceedings. And as already indicated, the Court has appointed you counsel which will be available to you throughout any proceedings.

"You are charged in the Information with the crime of, and that is in the first count of the Information which you are now being arraigned upon, with the crime of

indecent liberties, which is a felony in the state of Colorado. You have a right to trial by jury thereon, which is waived by a plea of guilty. And upon a plea of guilty the Court, in its sole discretion, may sentence you either to the state reformatory or to the state penitentiary. And if sentenced to the state reformatory, the sentence thereto would be for an indeterminate period of time under Colorado Law.

"On the other hand, if in the discretion of the Court the sentence should be to the state penitentiary, the Court could sentence you to as many as ten years in the state penitentiary.

"If you have two prior convictions of a felony, or have been previously convicted of either first or second degree murder, you are not eligible to receive probation. Although you may be eligible to receive probation, although you may be otherwise legally eligible to receive probation, the possibility of probation, if any at all, should in no way affect your plea to the charge.

"Now, in certain sex crimes, of which indecent liberties with which you are charged in Count One is one of these sex crimes, under our so-called sex statutes in this state the Court may sentence you to a state institution for an indeterminate period, for a minimum of one day and a maximum of natural life, after an examination as provided by law; namely, an examination by experts in the field of psychiatry, or mental examination as it were.

"If you have ever been previously convicted as a sex offender for the particular crime, there is a possibility under the law that you might not be eligible for probation.

"Are you under the influence of any narcotics, drugs or drink?

"MR. BREWER: At the present time?

"THE COURT: Yes.

"MR. BREWER: No, Your Honor, not at the present time.

"THE COURT: Have you ever been a patient in any mental institution?

"MR. BREWER: No, I haven't, Your Honor.

"THE COURT: Is your plea of guilty to Count One, charging indecent liberty the result of any promise, threat or intimidation from or by your own attorney, any member of the District Attorney's office, any law enforcing agent, or any other person or persons whatever?

"MR. BREWER: No.

"THE COURT: Now, with respect to the fact that there are two counts in the Information, at this point I want to ask a couple of questions.

"While it may appear that the District Attorney, by arraigning you only on Count One, in the event the Court does finally receive a plea of guilty from you and they may or may not proceed on Count Two, I must inquire at this time whether or not your plea to this charge would be any different if they should for any reason of their own proceed to arraign you on Count Two charging unnatural carnal copulation?

"MR. BREWER: No.

"THE COURT: Your plea would be the same?

"MR. BREWER: Yes.

"THE COURT: There is no promise or threat or intimidation whatever by your own attorney or any member of the District Attorney's office, or any law enforcing agent or any other person or persons whatever on your plea to Count One, charging indecent liberties?

"MR. BREWER: No.

"THE COURT: Have you had ample time to consult with your attorney as to the plea you should make?

"MR. BREWER: Yes.

"THE COURT: Has your counsel explained to you the nature of the charge against you in Count One and the possible consequences of your tendered plea of guilty?

"MR. BREWER: Yes.

"THE COURT: Is your plea of guilty made freely and voluntarily to the charge of indecent liberties in Count One?

"MR. BREWER: Yes.

"THE COURT: Do you understand the nature and the possible consequences of your plea of guilty to Count One, indecent liberties?

"MR. BREWER: Yes.

"THE COURT: With this explanation of the nature of the charge against you and of the possible consequences of your tendered plea of guilty to Count One of the Information charging indecent liberties, do you still say and persist in your plea of guilty thereto?

"MR. BREWER: Yes.

"THE COURT: Is counsel for the defendant satisfied that the defendant understands the nature of the charge against him in Count One of the Information charging indecent liberties and understands the possible consequences of his tendered plea of guilty and that his plea thereto is made freely and voluntarily?

"MR. OLSON: I am, Your Honor.

"THE COURT: The plea of guilty to Count One, indecent liberties, being made voluntarily and with an understanding of the nature of the charge and the possible consequences thereof, it is ordered entered, received and recorded.

"The case will be continued until 9:30 a.m. tomorrow morning for the taking of evidence in aggravation and mitigation."

Turning now to the proceedings on defendant's motion under Rule 35(b), the court appointed new counsel to replace trial counsel who had withdrawn. The court then conducted an extensive evidentiary hearing at which seven persons testified, including the defendant and the defendant's trial attorney. At the conclusion of the hearing, the court entered detailed findings of fact consisting of twenty pages of discussion concerning the testimony which had been presented in support of defendant's motion.

I.

■■ Relating to defendant's first specification that his guilty plea was the result of police coercion, threats,

intimidation, promises, and a denial of constitutional rights, the court specifically found to the contrary. In this regard defendant's principal argument relates to what defendant contends was a threat by the district attorney to file an additional charge of rape unless the defendant would plead guilty to the lesser charge of indecent liberties, and that his attorney made a "deal" with the district attorney. In contrast the prosecution characterized the negotiations between the district attorney and defense counsel as legitimate "plea bargaining." The court agreed with the prosecution and found there "is no evidence before this court of any improper 'deal'." That plea bargaining is a permissibly acceptable procedure in Colorado is no longer open to question. *Smith v. People,* 162 Colo. 558, 428 P.2d 69; *Lucero v. People,* 164 Colo. 247, 434 P.2d 128; *Maes v. People,* 164 Colo. 481, 435 P.2d 893. The court, in reviewing the evidence available to the district attorney to support a rape charge against defendant, found that the "little girl's statement, People's Exhibit 'A,' together with the doctor's report, People's Exhibit 'C,' removes any doubt that a representation to file a count of rape was a false one made to induce a plea of guilty. Also, an indication by the district attorney to defendant's counsel that he would move the court to dismiss Count Two if a plea of guilty were made to Count One in no way renders defendant's plea of guilty coerced or involuntary * * *."

Defendant's second argument is directed to the confession which the court found to be inadmissible. Although the court found the confession to have been the product of improper psychological inducements and such that in a contested trial it would have been inadmissible, still the court found the confession did not "infect" the plea of guilty so as to render it involuntary. It is true as defendant contends that a plea of guilty which is induced wholly or partially by a coerced confession is invalid under the due process clause of the Fourteenth Amendment, and this without regard to the

truth or falsity of the confession. *Herman v. Claudy,* 350 U.S. 116, 76 S.Ct. 223; 100 L.Ed. 126; *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. However, as discussed in *United States ex rel. Ross v. Mc-Mann, Warden,* 409 F.2d 1016, the mere existence of a coerced confession does not necessarily in and of itself invalidate a later plea of guilty by a defendant who is represented by counsel. It is only one of the factors to be considered by the court in determining the ultimate question of whether the defendant had the free will essential to make a reasoned choice at the time he entered his plea of guilty. In the instant case the trial court considered the totality of events and circumstances preceding the entry of the plea and found as a fact there was no improper inducement. This finding is supported by the record.

II.

■ Defendant's second specification concerns the alleged failure of the court to take evidence in aggravation and mitigation as required by C.R.S. 1963, 39-7-8, the result of which failure prevented proof by defendant that his plea of guilty was involuntary. This specification was totally erroneous. The record shows a full evidentiary hearing on aggravation and mitigation, during which defendant himself testified to matters in mitigation.

III.

■ Defendant's third specification charged that the plea of guilty was obtained from defendant "after threats, and police brutality in a physical sense." This the court found to be without basis in view of the overwhelming evidence to the contrary, and particularly in view of the admitted fact that defendant never advised his trial attorney of the alleged beatings and physical violence although in connection with their preparation of the case they conferred together on eight separate occasions.

The court's finding here is amply supported by the record and will not be disturbed.

■ At the conclusion of its exhaustive review of the facts and circumstances surrounding defendant's entry of the guilty plea, the court stated as follows:

"This Court finds beyond a reasonable doubt that defendant's plea of guilty to Count One, charging Indecent Liberties, was understood by him, freely and voluntarily made while represented by competent effective counsel and that the same was knowingly, intelligently, and competently made, nor was said plea of guilty unfairly obtained, or the result of ignorance, fear, or inadvertence."

We conclude that the trial court did not abuse its discretion in refusing to set aside defendant's plea of guilty.

The judgment is affirmed.

Mr. Chief Justice McWilliams, Mr. Justice Day and Mr. Justice Pringle concur.